## Norris *versus* Sheppard.

A will duly made by one of sound mind and memory cannot be defeated by proof that his intentions at a previous time were different.  But where a person absent from home, had by will disposed of all his estate to a mere stranger and evidence was produced that the testator was probably insane when he made the will, the party contesting the will, in an issue of *devisavit vel non*, may show that the testator lived on amicable terms with his sisters, and some months before his departure and death had said that what property he had would go to them.

ERROR to the Common Pleas of *Philadelphia.*

This was an issue of *devisavit vel non*, between Norris as plaintiff, and Priscilla T. Sheppard, Josiah M. Reeve, William, Emma, Letitia, and Richard M. Reeve, defendants.   The issue had been directed to try the validity of an alleged will of Dr. M. M. Reeve.

Dr. Reeve had been a physician for a number of years in Philadelphia, and in the year 1851, left for Central America to join a party engaged in mining operations at Fort Bowen, on the Isthmus of Panama.   He expected to return to Philadelphia.   He arrived at the Isthmus about the 17th January, 1851.   About the 17th February, he was attacked with fever, from which he recovered to some extent, but had a relapse about the 1st of March, and died on the 4th.   By his will, without date, but proved to have been made on the 3d March, the day preceding his death, all his estate, both real and personal, were briefly bequeathed to Norris, the plaintiff in the issue, and he was appointed executor.

On the part of the plaintiff the will was given in evidence.

Also the deposition of Dr. J. K. Merritt, who was in attendance on the testator during his illness, and was present when the will was drawn up by Norris and when it was signed by the testator; the witness and four others signing as witnesses.   He stated that on Sunday (which was 2d March) the testator was worse, in a

[Norris *v.* Sheppard.]

state of extreme prostration, and sleeping very profoundly. By the use of remedies reaction was partially established that evening or night. Next morning, Monday, after the reaction had became partly established, he came to his senses and conversed. The witness had but faint hopes of his recovery. *The witness* then proposed to Norris to have a conversation with Dr. Reeve about his worldly affairs. It was had in the presence of the witness and of several others. Norris asked the Doctor if he wished to make a will; and the latter said " Certainly." And in reply to a question by Norris, as to whom he wished to leave his property, he answered, " to you." That the question as to whom he would bequeath his property, was repeated three times; that the will was drawn up by Norris and read to Dr. Reeve, in the presence of the witness and others, and the Doctor signed it.

The witness also testified that from about the middle of the day (Sunday) previous to his death, till early on Monday morning, the patient was unconscious, but not delirious; that he revived on Monday morning, when he became conscious, and remained so until the evening of that day. During Monday night he was *delirious*, and on Tuesday morning he died. The witness stated that on Monday he conversed with the Doctor; the latter was sane, gave correct answers and also asked questions.

In answer to a question as to his belief as to the state of mind of the deceased at the time he signed the will, he replied, "he was perfectly sane, and conscious of that which he had done."

Other testimony in support of the will was given.

On the part of *the defendants*, testimony was given that the deceased had three or four thousand dollars, in notes, gold, and silver, when he left Philadelphia. That he had four brothers and two sisters ; was unmarried, &c.; that his relations to his brothers and sisters were amicable and kind. That he made a sister a present of a watch as a keepsake.

Dr. Beesley, a physician, was examined, and, *inter alia*, testified that, when the deceased left, he was in good health ; that it would require a severe fever to carry off a man of his constitution in three or four days' illness. He said, "I should not, from reading Dr. Merritt's testimony, think that Dr. Reeve, when he signed the will, was of sufficiently sound mind to make a will."

Another witness, F. Blackburn, was called. He was asked as to Dr. Reeve's *intention to leave his property.* This testimony was objected to, but was admitted. He testified that, before Dr. Reeve went away, the witness spoke to him about insuring his life. That the Doctor said, "I will not, for the little I have will go to my sisters and Mrs. Sheppard."

On 30th April, 1852, verdict was rendered *for the defendants.*

It was assigned for error, that the Court erred in permitting

[Norris v. Sheppard.]

the witness to testify to the testamentary declarations of Dr. Reeve.

*Olmsted*, with whom was *Smith*, for plaintiff in error.—It was contended that the declarations of the testator, which were objected to and received in evidence, were not admissible.   As to the case of Irish v. Smith, 8 *Ser. & R.* 579, cited on the part of defendants, it was observed that it did not decide to the extent contended for in this case; and that it did not appear that the evidence of intention in relation to the will of Judge Bradford, referred to in the opinion of TILGHMAN, C. J., page 579–80, was not testamentary *dispositions*, which differed from mere declarations of the testator; the former being deliberate acts, the latter often made to mislead or to silence inquirers.   It was observed that the cases of Smith v. Fenner, 1 *Gallison* 170, and of Derr v. Vancleve, 2 *Southard* 589, were not in point.

*Emlen* and *Scott*, were for defendants in error, but the Court declined to hear them.—In their printed argument, it was observed that the evidence of Blackburn, which was excepted to, was not offered to show any testamentary declaration of Dr. Reeve, as that would have defeated the case of *the brothers* of the defendants, who were also parties to the issue; but was offered to show his feelings of kindness towards the natural objects of his affection. But it was said that there was no valid distinction between a testamentary declaration and a testamentary deposition, except that the latter was more formal.   That declarations of the testator were admissible, reference was made to 7 *Ser. & R.* 90, Rambler v. Tryon; 6 *Id.* 56; 2 *Southard* 589.

The opinion of the Court was delivered, May 12, by
BLACK, C. J.—This was an issue of *devisavit vel non*.   The will was made in Central America when the testator was at the point of death, and left the bulk of his property to the person who wrote it, and who was not his relative.   It was alleged that he was not of sound mind, and, as one circumstance, it was proved that he had sisters at home with whom he was on such terms of affection that he would not be likely to leave them without a provision, if he had understood what he was doing; and to strengthen the force of this fact, evidence was offered and admitted, that before he left Philadelphia, he declared that all he had should go to them at his death.   Was this declaration admissible?

It is doubtless true that a testamentary writing, duly and solemnly made by a man of sound mind and memory, cannot be defeated by proof that his intentions were different at a previous time.   But when one disposes of all his property to a mere stranger, and evidence is produced to show that he was insane when he did

[Norris *v.* Sheppard.]

it, the contesting party may prove that his relatives were near to him in affection as well as in blood, and thus increase the improbability that the will was the result of his deliberate judgment. How can this be proved except by his acts and declarations? There may be cases where such declarations would amount to very little, as where they express an intention in favor of persons not at all or very remotely connected with the testator, and the will gives the property to an intimate friend. But it might also happen that evidence of this kind would carry irresistible conviction with it. For instance, suppose the testator to have a wife and children for whose sake he has labored industriously all his life, declaring his purpose to leave them all his fortune down to the moment when the delirium of a fatal illness clouds his understanding or fills it with delusions, and then for the first time, and without any assignable reason, he expresses his intention to disinherit the objects of his natural love, and give his property to one whom he has never seen before. I do not say that this is a case like the one last supposed. But the testator's declarations, considered with reference to the other facts, were strong and pertinent evidence, not only admissible, but entitled to great weight with the jury.

Judgment affirmed.